8 U.S. 384
 4 Cranch 384
 2 L.Ed. 655
 YOUNG
v.
THE BANK OF ALEXANDRIA.
 February Term, 1808
 
 ERROR to the circuit court for the district of Columbia, sitting at Alexandria.
 C. Simms, for the defendant in error, having obtained a rule on the plaintiff in error, to show cause why the writ of error should not be quashed,
 Roungs, E. J. Lee, and Jones, now showed cause; and read a printed paper produced by the other side, purporting to be the act of assembly of Virginia, of 1792, incorporating the bank, and giving them a right to obtain judgments against their debtors at the first term, without appeal or writ of error; another printed paper, also produced by the other side, purporting to be the act of assembly of Virginia, of the 21st of January, 1801, continuing the act of 1792, until the year 1811, which would otherwise have expired in the year 1803; the act of congress of the 27th of February, 1801, erecting the circuit court for the district of Columbia, and providing for an appeal or writ of error to this court, in all cases where the matter in dispute shall exceed the value of one hundred dollars, with a proviso that nothing in that act should impair the rights granted by, or derived from the acts of incorporation of any body corporate within the district; the act of assembly of Virginia, of 1789, ceding to the United States a territory for the seat of their government, and the act of congress of 1790, accepting the cession.
 They contended,
 1. That when the legislature of Virginia passed the act of 21st of January, 1801, continuing the act of 1792, which incorporated the bank, the state of Virginia had no power to legislate for the district of Columbia, and therefore could not give continuance to the act of 1792, as a law in that district. The consequence of which is, that there is now no law in the district of Columbia which gives to the bank any exclusive privileges.
 2. That the act of Virginia, of 21st of January, 1801, was not adopted as the law for the district of Columbia, by the act of congress of 27th of February, 1801.
 3. That if the act of 21st of January, 1801, was adopted as to its general provisions, yet so much of it as takes away the right of appeal was not adopted, because inconsistent with that part of the adopting law, which gives an appeal or writ of error, in all cases where the matter in dispute exceeds the value of 100 dollars.
 4. That the acts of 1792, and 21st of January, 1801, were private acts, and that the papers read, purporting to be those acts, were not sufficiently authenticated, and could not be noticed by the court.
 The points being opened, the court requested to hear the counsel on the other side.
 C. Simms, for the bank.
 The first question is, whether the right of Virginia to legislate for the district of Columbia, ceased on the 1st Monday in December, 1800, when the district became the seat of the national government, or on the 27th of February, 1801, when congress first provided by law for the government of the district under their jurisdiction. By the act of assembly of Virginia, passed on the 3d of December, 1789, for the cession of a territory, for the permanent seat of the general government, (Revised Code, p. 52.) it is enacted, 'that a tract of country, not exceeding ten miles square, or any lesser quantity, to be located within the limits of this state, and in any part thereof as congress may by law direct, shall be, and the same is hereby, forever ceded and relinquished to the congress and government of the United States, in full and absolute right and exclusive jurisdiction, as well of soil as of persons residing or to reside thereon, pursuant to the tenor and effect of the 8th section of the 1st article of the constitution of government of the United States.''Provided, that the jurisdiction of the laws of this commonwealth, over the persons and property of individuals residing within the limits of the cession aforesaid, shall not cease or determine, until congress, having accepted the said cession, shall by law provide for the government thereof, under their jurisdiction, in manner provided by the article of the constitution before recited.'
 By the act of congress of 16th of July, 1790, for establishing the temporary and permanent seat of the government of the United States, vol. 1. p. 132. it is enacted 'that a district of territory, not exceeding ten miles square to be located, as hereafter directed on the river Potomac, at some place between the mouths of the Eastern-branch, and Connogochegue, be, and the same is hereby accepted for the permanent seat of the government of the United States; provided nevertheless, that the operation of the laws of the state, within such district, shall not be affected by this acceptance, until the time fixed for the removal of the government thereto, and until congress shall otherwise by law provide.
 The time for the removal of the government to the district, was by the same act fixed to be the first Monday in December, 1800.
 The government having been on that day removed to the district, congress did not by law provide for the government thereof, under their jurisdiction, until the 27th of February, 1801; until which day, we contend, the jurisdiction of the laws of Virginia, or in other words the right of Virginia to legislate for the district, did not cease or determine. Virginia had therefore a right to pass the act of 21st of January, 1801, which was consequently one of the existing laws of Virginia, in the district of Columbia, on the 27th of February, 1801, when congress enacted, 'that the laws of Virginia as they now exist, shall be and continue in force in that part of the district of Columbia, which was ceded by the said state to the United States, and by them accepted for the permanent seat of the government.'There are only two instances in which congress have referred to the 1st Monday of December, 1800, as the period of separation, viz. in the act of 3d March, 1801, s. 7. vol. 5. p. 290. authorising the sheriffs of the adjoining counties in Maryland and Virginia, to proceed to collect taxes and officers' fees, due before that day; and in the act of May 3d, 1802, s. 13. vol. 6. p. 183. which refers to the militia-laws of the states of Maryland and Virginia, as they stood in force in the district, on the 1st Monday of December, 1800.
 The right of the bank to obtain judgment against their debtors at the first term without appeal, is a right granted to them by their act of incorporation, and is therefore saved by the proviso of the statute of 27th February, 1801, and is therefore an exception to the general clause, which gives a right of appeal in all cases.
 But it is contended that the acts of Virginia, incorporating the bank of Alexandria, are private acts, and that the printed papers now produced ought not to be regarded by the court as evidence of the existence of such acts. The acts which we read to the court, are found printed with, and bound up among the public acts of the commonwealth. The title-page declares the book to contain the acts of assembly of the commonwealth of Virginia, and to be printed by Augustine Davis, who, we are ready to prove, was the public printer for the years when those laws were passed. By the act of assembly of Virginia, of 22d January, 1798, the public printer is to be appointed annually, by the joint ballot of both houses, and it is made his duty to publish all laws passed during the session. (New Revised Code, 382.) The executive is also bound by law, to send copies of all the laws, when printed, to the clerks of the courts, &c. and by another statute, private acts of assembly may be given in evidence, without pleading them specially. (New Rev. Code, 59. 112.)
 There is a difference between the laws of Virginia, and those of England, respecting the authentication of private acts. In England they are never printed nor promulgated, but remain with the clerk of parliament. But in Virginia they are printed and promulgated by the authority of the legislature, and are as well authenticated as public acts.
 But this is a public act.
 CHASE, J. The act makes it felony to counterfeit the notes of this bank. Does not that make it a public act?
 
 
 1
 MARSHALL, Ch. J. said, that the opinion of the court was very strong, that this is a publie act; and that if it were not, it being printed by the public printer, by order of the legislature, agreeably to a general act of assembly for that purpose, it must be considered as sufficiently authenticated. But that the court would not prevent counsel from arguing the point, if they thought they could support the contrary opinion; which the counsel declined attempting.
 
 
 2
 At the opening of the court, on the next morning,
 
 
 3
 Youngs, for the plaintiff in error, being about to reply,
 
 
 4
 MARSHALL, Ch. J. said, the court is so much of opinion that the point is decided by the case of Wilson and Mason, (ante, vol. 1. p. 91.) that they are inclined to hear the other side.
 
 
 5
 By the Virginia land law, no appeal or writ of error is allowed in caveats; and by the compact between Virginia and Kentucky, that law was immutable; yet this court, in Wilson and Mason, decided that the act of congress which gives a writ of error in all cases, so far repealed the state law, as to prevent it from operating upon the United States court, for the district of Kentucky.
 
 
 6
 JOHNSON, J. Perhaps a distinction may be drawn between that case and this. If the bank of Alexandria had a vested right under the act of incorporation, it is saved by the proviso in the act of 27th of February, 1801.
 
 
 7
 The Court, thereupon directed Youngs to proceed in his argument.
 
 
 8
 Youngs, for the plaintiff in error.
 
 
 9
 By the 8th section of the 1st article of the constitution of the United States, power is given to congress, 'To exercise exclusive legislation over such district, not exceeding ten miles square, as may by cession of particular states, and the acceptance of congress, become the seat of the government of the United States.' The moment the district became the seat of government, congress had the right of exclusive legislation over it. There could be no concurrent rights of exclusive legislation. The idea is absurd and impossible. There can be but one right of exclusive legislation, and by the constitution of the United States, it was vested in congress. It is not necessary that congress should have exercised the right in order to vest it in themselves. It must have vested in them before they could exercise it. The district of Columbia, both in law and in fact, became the seat of government of the United States, on the 1st Monday of December, 1800. From that moment the right of the state of Virginia to legislate over the district ceased. It could make no law to affect the property, or persons within it. Virginia did not attempt it. She knew she had no power, and therefore she has used language appropriate only to her own territory. She has authorised the stockholders to choose their directors in the state of Virginia, out of the district. She speaks of the town of Alexandria, as being 'in that part of the district of Columbia, which heretofore formed a part of this commonwealth.'
 
 
 10
 Three things only were necessary to vest the exclusive power of legislation in congress. A cession of territory by some of the states—an acceptance by congress—and the ceded territory being actually the seat of the government of the United States. These events had all happened on the first Monday of December, 1800. No further act was necessary. The right to legislate was complete and exclusive whether congress exercised it or not.
 
 
 11
 But it is said that, if Virginia could not legislate for the district of Columbia, yet she could legislate for herself; and congress by the act of 27th February, 1801, adopted all her laws as they then existed.
 
 
 12
 As they existed where? we say, as they then existed in the district of Columbia; that was the territory over which congress was legislating, and their object was merely to continue in force the laws, then existing in the district.
 
 
 13
 If Virginia had no right to legislate for the district of Columbia, when she passed the act of the 21st of January, 1801, that act was not in force, and did not exist, as a law, in the district of Columbia, on the 27th of February, 1801; and if it did not then exist as a law in the district, it could not be continued in force by the act of congress. The words of the act of congress are, 'the laws of the state of Virginia as they now exist, shall be and continue in force, in that part of the district,' &c.
 
 
 14
 The legislatures of Virginia, and of the United States, both began their sessions on the same first Monday of December, 1800. It is not possible that congress, when they had passed the act of the 27th of February, 1801, should know what acts Virginia had passed at that session. The laws of that session were not then promulgated; and it cannot be supposed that congress meant blindfold to adopt whatever Virginia should chuse to enact. It cannot be presumed that congress would have adopted the act of 21st of January, 1801, if they had known it, because it was equivalent to giving the bank of Alexandria a new charter; and to give any bank a charter by a law of the United States, prior to the 4th of March, 1811, is to violate the public faith, pledged to the bank of the United States. If therefore a doubt can be raised as to the intention of the United States, this court will not give the law such a construction as would violate the public faith.
 
 
 15
 There is another objection to that part of the act of Virginia, which gives exclusive privileges to the bank of Alexandria.
 
 
 16
 It is directly repugnant to the bill of rights of Virginia, the fourth article of which declares, 'that no man, or set of men, are entitled to exclusive or separate emoluments, or privileges from the community, but in consideration of public services.'
 
 
 17
 MARSHALL, Ch. J. We will consider that point when we come to the general merits of the case.
 
 
 18
 Youngs. But if the court should quash the writ of error, they will never hear the merits.
 
 
 19
 CHASE, J. But if it be contrary to the constitution of Virginia, are we to decide upon its unconstitutionality? I must say I think we cannot.
 
 
 20
 E. J. Lee, on the same side.
 
 
 21
 We do not contend that the bank has no charter; we admit that the bank still exists as a corporate body in Virginia, and may there exercise all its functions, choose its officers, keep its banking house, and transact its business. But we say it has no peculiar privileges in the courts of the United States. We deny it has existence as a corporate body in the district of Columbia, and that the court below is bound by any of the remedies which the bank is entitled to in the courts of Virginia, by virtue of any law of Virginia, passed since the first Monday in December, 1800. It never had a right to its summary remedy in the courts of the United States, and therefore no such right could be saved by the proviso in the act of the 27th of February, 1801. We consider the case of Wilson and Mason as decisive.
 
 
 22
 Swann, contra.
 
 
 23
 There is a distinction to be taken between this case and that of Wilson and Mason. There the right of appeal was a constitutional right. It grew out of the constitution of the United States, which gave to the courts of the United States jurisdiction between citizens of different states, and to this court its appellate power. This is the ground taken by the court in delivering its opinion in that case.
 
 
 24
 But the right of appeal in this district is not a constitutional right. The courts of this district are of legislative, not of constitutional creation. The power of this court to hear appeals from the circuit court of this district, is a power not derived from the constitution. This district is like a state, and congress legislates for it as a state legislature would for a state.
 
 
 25
 The act of the 21st of January, 1801, was an existing law operating upon this part of the district on the 27th of February, 1801. On the 21st of January, 1801, the jurisdiction of Virginia in all respects whatever existed over this district, and continued until congress by an act assumed the jurisdiction. Congress had power to exercise exclusive legislation, but was not bound to exercise it. Until they chose to exercise it by providing for the government of the district, the jurisdiction of the laws of Virginia was not to cease. What is the jurisdiction of the laws, but the jurisdiction of the commonwealth? The jurisdiction of the laws comprehends the whole jurisdiction. If not the whole jurisdiction, what part does it comprehend? It was intended that there should be no interregnum, no time in which the inhabitants of the district should be without laws, and without the means of enforcing them. The jurisdiction of the courts and officers was to continue, as well as the laws, to be considered as mere rules of conduct.
 
 
 26
 It is evident by the act of February 27, 1801, that congress considered the district as remaining under the jurisdiction of Virginia until that day.
 
 
 27
 The legislature of Virginia had the same understanding. The act of the 21st of January, 1801, says, the charter of the bank is hereby continued, which they could not do, unless they had jurisdiction. The court of Hustings of Alexandria was also holden in January and February, 1801, by the justices holding their offices under Virginia.
 
 
 28
 Here then was the concurrent understanding of the congress, of the legislature of Virginia, and of the courts of that part of the district.
 
 
 29
 But even if the power of Virginia to legislate for the district had ceased, the act of 21st of January, was a law in Virginia on the 27th of February, 1801, and as such was adopted by the act of congress of that date.
 
 
 30
 It is said that congress cannot be supposed to intend to adopt the laws of the session of Virginia, which began on the 1st Monday of December, 1801, because congress cannot be presumed to have had knowledge of them. But congress cannot be presumed to have had knowledge of all the laws which were in existence, in Maryland and Virginia, before that period. Yet they adopted them. They took them upon trust; and they had as much reason to adopt those of the session of 1800-1801, as those of any former period.
 
 
 31
 C. Simms, on the same side.
 
 
 32
 It is admitted that the jurisdiction of Virginia did not cease by the act of cession of 1789, nor by the act of acceptance of 1790; why should it cease on the first Monday of December, 1800? We say four things were necessary to divest the jurisdiction of Virginia.—1. The cession. 2. The acceptance. 3. The removal of the seat of government to the district, and 4. The actual providing by congress for the government of the district under their jurisdiction. Only three of these four events had happened on the first Monday of December, 1800.
 
 
 33
 What reason is there for supposing that Virginia retained an executive and a judicial jurisdiction over the district, and not a legislative jurisdiction also? If she could legislate for the district, after the cession and acceptance, she retained that power until congress provided for the government of the district.
 
 
 34
 By the act of cession in 1789, individual rights were not to be impaired by the change of jurisdiction whenever it should take place. This provision applied not to rights then existing, but to any which might be acquired under the laws of Virginia, before the actual transfer of the jurisdiction; so that there was a pledge of the public faith, in favour of the bank of Alexandria, prior to that in favour of the bank of the United States. Before the transfer of jurisdiction, also, the bank of Alexandria had acquired a right to the summary remedy without appeal.
 
 
 35
 The plaintiff in error had no right to complain of the exercise of that summary remedy in his case. He knew the rights of the bank before he obtained their credit, and became their debtor.
 
 
 36
 The decision of this court in Wilson and Mason, was predicated upon the principle that no act of a state legislature could deprive the courts of the United States of their jurisdiction; but here the act taking away the right of appeal, has been adopted by congress, and therefore is in fact a law of the United States.
 
 
 37
 Jones, in reply.
 
 
 38
 If the decision be against the bank, it will only go to deprive them of an odious and oppressive prerogative which they have assumed. They may still enjoy the benefits of their charter in Virginia.
 
 
 39
 The distinction attempted to be drawn between this case, and that of Wilson and Mason, is not founded in fact. The constitution of the United States gives to this court appellate jurisdiction in all cases arising under the constitution and laws of the United States, with such exceptions, and under such regulations as congress shall make.
 
 
 40
 The cases which occur in the district of Columbia, under the exclusive legislation of congress, are all cases which arise under the constitution and laws of the United States. Congress has not only, not excepted them from the jurisdiction of this court, but has regulated the mode by which they may be brought before it.
 
 
 41
 The circuit court of the district of Columbia is a branch of the judiciary of the United States. It holds by the same tenure as every other court of the United States, and exercises a part of the judicial power of the United States, and this court exercises its appellate jurisdiction as much under the constitution in these cases, as in any other.
 
 
 42
 It cannot be supposed that the constitution intended congress should create judges and courts, independent of the constitution.
 
 
 43
 The same general question therefore occurs in this case as in that of Wilson and Mason; and is to be decided by the same principles.
 
 
 44
 If it was intended to say that the general jurisdiction of Virginia should continue until congress should legislate for the district, the legislature of Virginia, and congress would have said so expressly, and not used the limited expressions, 'jurisdiction of the laws,' and 'operation of the laws.' The power of legislation may cease, and yet the jurisdiction of the laws remain, and the officers of justice still continue to exercise their functions by virtue of the compact. Such is the case in conquered and ceded countries. They generally, by treaty, remain under the jurisdiction of the old laws, and old officers, until new laws are enacted, and new officers appointed; and yet it is not contended that the old sovereign can legislate for them.
 
 
 45
 The act of congress accepting the territory, either explains or restricts the act of cession. It uses the expression, 'operation of the laws' instead of 'jurisdiction of the laws.'
 
 
 46
 We contend they mean the same thing, i. e. that the laws shall remain as the rule of conduct, until altered or repealed by congress. Virginia and the United States were two sovereigns treating respecting a cession of territory. They agree that the cession shall take effect upon a certain event, and that the laws then existing in the ceded territory, shall continue until the new government shall otherwise provide.
 
 
 47
 This cession took effect on the 1st Monday of December, 1800, and by the terms of the cession and acceptance, the laws then in force in the district were to continue in operation until congress should provide for the government thereof. The laws then which were in force in the district, on the 27th of February, 1801, were those only which were in force on the first Monday of December, 1800. By the act of 27th of February, congress declares that the laws of Virginia as they now exist, shall be and continue in force, &c. The expression is not, which now exist, but as they now exist, which is descriptive of the manner in which they existed; that is by virtue of the cession and acceptance.
 
 March 12.
 
 48
 MARSHALL, Ch. J. delivered the opinion of the court as follows, viz.
 
 
 49
 This is a motion to quash a writ of error which has issued to a judgment obtained by the bank of Alexandria in the circuit court for the district of Columbia sitting in Alexandria. In support of the motion, it is contended that no writ of error lies to such a judgment.
 
 
 50
 The words of the act of congress of February, 1801, by which the circuit court for the district of Columbia was erected, are these: 'Any final judgment, order or decree, in the said circuit court, wherein the matter in dispute, exclusive of costs, shall exceed the value of one hundred dollars, may be re-examined, and reversed or affirmed, in the supreme court of the United States, by writ of error or appeal.'
 
 
 51
 Upon the operation of this clause in the 'act concerning the district of Columbia,' no doubt could be entertained, were it not produced by the last section, which enacts that nothing in that act contained 'shall in any wise alter, impeach or impair the rights granted by or derived from the acts of incorporation of Alexandria and Georgetown, or of any other body corporate or politic within the district.'
 
 
 52
 The state of Virginia had, in November, 1792, passed an act for establishing a bank in the town of Alexandria, which act incorporated the bank, and, in addition to the privilege of summary process for the recovery of debts, deprived their debtors of the right of appeal.
 
 
 53
 In January, 1801, the legislature of Virginia passed an act continuing the charter of the bank to the 4th of March in the year 1801, and authorising them to transact business in the county of Fairfax.
 
 
 54
 It is the opinion of the majority of the court, under the terms of the cession and acceptance of the district, that the power of legislation remained in Virginia until it was exercised by congress.
 
 
 55
 But the question recurs, whether that part of the act of Virginia which takes away the right of appeal, taken in connection with the act of congress passed in February, 1801, is now in operation.
 
 
 56
 The words of the act of congress being as explicit as language can furnish, must comprehend every case not completely excepted from them. The saving clause in the last section only saves existing rights; it does not extend those rights, or give new ones. The act incorporating the bank professes to regulate, and could regulate, only those courts which were established under the authority of Virginia. It could not affect the judicial proceedings of a court of the United States, or of any other state.
 
 
 57
 There is a difference between those rights on which the validity of the transactions of the corporation depends, which must adhere to those transactions every where, and those peculiar remedies which may be bestowed on it. The first are of general obligation; the last, from their nature, can only be exercised in those courts which the power making the grant can regulate. The act of incorporation, then, conferred on the bank of Alexandria a corporate character, but could give that corporate body no peculiar privileges in the courts of the United States not belonging to it as a corporation. Those privileges do not exist, unless conferred by an act of congress.
 
 
 58
 The mere saving in an act of congress which expressly renders all judgments of the circuit court, for a larger sum than one hundred dollars, re-examinable by writ of error in this court, cannot be considered as exempting judgments rendered in favour of the bank, from the operation of this general enacting clause respecting writs of error. If the act of March, 1801, be considered as giving the bank a right to proceed in the circuit court for Alexandria, in the same manner as by the act of incorporation, it might proceed in Virginia, yet that act does not affect the writ of error as given in the act of the 27th of February.
 
 
 59
 The motion is, therefore, overruled.