(CONSTITUTIONAL LAW.)

## The BANK OF COLUMBIA v. OKELY.

The act of Assembly of Maryland, of 1793, c. 30, incorporating the Bank of Columbia, and giving to the corporation a summary process by execution, in the nature of an attachment, against its debtors who have, by an express consent, in writing, made the bonds, bills, or notes by them drawn or endorsed, negotiable at the Bank, is not repugnant to the constitution of the United States or of Maryland.

But the last provision in the act of incorporation, which gives this summary process to the Bank is no part of its corporate franchises, and may be repealed or altered at pleasure by the legislative will.

ERROR to the Circuit Court for the District of Columbia.

This was a proceeding in the Court below, under the act of Assembly of Maryland, of 1793, c. 30, incorporating the Bank of Columbia, the 14th section of which is in these words:

" And whereas it is absolutely necessary that debts due to the said Bank should be punctually paid, to enable the Directors to calculate with certainty and precision on meeting the demands that may be made upon them : Be it enacted, that whenever any person or persons are indebted to the said Bank for moneys borrowed by them, or for bonds, bills or notes

given or endorsed by them, with an express consent in writing that they may be made negotiable at the said Bank, and shall refuse or neglect to make payment at the time the same become due, the President shall cause a demand in writing on the person of the said delinquent or delinquents, having consented as aforesaid ; or if not to be found, have the same left at his last place of abode ; and if the money so due shall not be paid within ten days after such demand made, or notice left at his last place of abode as aforesaid, it shall and may be lawful for the President, at his election, to write to the Clerk of the General Court, or of the county in which the said delinquent or delinquents may reside, or did at the time he or they contracted the debt reside, and send to the said Clerk the bond, bill, or note due, with proof of the demand made as aforesaid, and order the said Clerk to issue *capias ad satisfaciendum, fieri facias*, or attachment by way of execution, on which the debt and costs may be levied, by selling the property of the defendant for the sum or sums of money mentioned in the said bond, bill, or note ; and the clerk of the General Court, and the clerks of the several county Courts, are hereby respectively required to issue such execution or executions, which shall be made returnable to the Court whose Clerk shall issue the same which shall first sit after issuing thereof, and shall be as valid and as effectual in law, to all intents and purposes, as if the same had issued on judgments regularly obtained in the ordinary course of proceeding in the said Court; and such execution or executions shall not be liable to be stayed or delayed by any supersedeas, writ of error,

appeal, or injunction from the Chancellor: *Provided always*, That before any execution shall issue as aforesaid, the President of the Bank shall make an oath (or affirmation, if he shall be of such religious society as allowed by this state to make affirmation,) ascertaining whether the whole or what part of the debt due to the Bank on the said bond, bill, or note, is due; which oath or affirmation shall be filed in the office of the Clerk of the Court from which the execution shall issue; and if the defendant shall dispute the whole, or any part of the said debt, on the return of the execution, the Court before whom it is returned shall and may order an issue to be joined, and trial to be had in the same Court at which the return is made; and shall make such other proceedings, that justice may be done in the speediest manner."

A motion was made in the Court below to quash an execution, which had been issued against the defendant under this section, upon the ground that it was contrary to the constitution of the United States, article 7th of amendments,[a] and to the 21st article of the bill of Rights of Maryland.[b]

---

*a* Which declares that, " In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact, tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

*b* Which declares, " That no freeman ought to be taken, or imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers, or by the law of the land."

The Court below quashed the execution upon these grounds, and the cause was brought by writ of error to this Court.

Mr. *Key*, for the plaintiff, argued, that the act of Congress of the 27th of February, 1801, giving effect to the laws of Maryland in that part of the District of Columbia, which was ceded to the United States by the State of Maryland, was a re-enactment of those laws under the exclusive powers of legislation given to Congress over the District; and that consequently the question of the repugnancy to the local constitution of Maryland could not properly arise. That such summary proceedings, whether of a criminal or civil nature, which were in force at the time when the constitution of the United States was established, were to be preserved, notwithstanding the 7th article of the amendments to that constitution. That the statute of Magna Charta in England, from which the 21st article of the bill of rights of Maryland is copied, was never supposed to be infringed by the multitude of modern statutes, under which summary convictions for petty offences were had, and the various summary proceedings authorized by the revenue laws, which had also been adopted in this country: but that what was conclusive of the question, was, that no person could ever be made liable to the peculiar process given by this act of Maryland, without his own express consent in writing, that the bill, or note, drawn or endorsed by him, should be negotiable at the Bank of Columbia; which, taken in connexion with the other provisions of the section,

was equivalent to an agreement that this summary process should issue against him in case of non-payment. It was, therefore, a case within the maxim *lex pro se introducta.* Even after the consent thus given to waive the trial by jury, in the first instance, the party may dispute the demand on the return of the execution, in which case the Court is to order an issue to be joined, and a trial to be immediately had by jury. So that the whole substantial effect of the provision is, to authorize the commencement of a suit by an attachment of the person and property of the debtor, instead of the usual common law process.

Mr. *Jones,* contra, insisted, that the act of Congress of the 29th of February, 1801, giving effect to the then existing laws of Maryland, in that part of the District of Columbia which had been ceded to the United States, by the State of Maryland, did not extend to such acts as are repugnant to the State and national constitutions. The bill of rights of Maryland limits the legislative powers of the Assembly of Maryland. By the third article of that bill of rights, the right of trial by jury is secured in all cases at common law, and the same right is secured by the seventh amendment to the constitution of the United States in all cases at common law above the value of twenty dollars. The consent of the party that his paper should be negotiable at the Bank, was by no means equivalent to an agreement, that this summary process of execution before judgment, inverting the just and natural order of judicial pro-

ceedings, should be issued against him. Nor could the party thus consent prospectively to renounce a common-law right. As a stipulation in a policy of insurance not to sue, but to abide by the award of arbitrators, will not deprive the Courts of common law of their ordinary jurisdiction, so neither will the consent of the party thus given, deprive him of his right to a trial by jury. But even supposing the process were in other respects regular, the act under which it is issued does not empower the clerk of the Circuit Court of the District of Columbia to issue it. It is conferred by the letter of the statute upon the clerks of the General Court, or the County Court, and no provision is made in the act of Congress of the 27th of February, 1801, for vesting the same powers in the clerk of the Circuit Court of the District, and for giving to that Court the same jurisdiction over the case which the State Court of Maryland previously had.

Mr. *Martin,* contra, was stopped by the Court.

Mr. Justice JOHNSON delivered the opinion of the Court. In this case the defendant contended, that his right to a trial by jury, as secured to him by the constitution of the United States, and of the State of Maryland, has been violated. The question is one of the deepest interest; and if the complaint be well founded, the claims of the citizen on the protection of this Court are peculiarly strong.

The 7th amendment of the constitution of the United States is in these words :

"In suits at common law, where the value in controversy shall exceed 20 dollars, the right of the trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

The 21st article of the Declaration of Rights of the State of Maryland, is in the words of Magna Charta.

"No freeman ought to be taken or imprisoned, &c. or deprived of his life, liberty, or property, but by the judgment of his peers, or by the law of the land."

The act by which this bank is incorporated, gives a summary remedy for the recovery of notes endorsed to it, provided those notes be made expressly negotiable at the bank in their creation. This is a note of that description; but it is contended, that the act authorizing the issuing of an execution, either against the body or effects of the debtor, without the judgment of a Court, upon the oath and demand of the president of the bank, is so far a violation of the rights intended to be secured to the individual, under the constitution of the United States, and of the State of Maryland. And as the clause in the act of incorporation, under which this execution issued, is express as to the Courts in which it is to be executed, it is farther contended, that there is no provision in the law of Congress for executing it in this district.

We readily admit, that the provisions of this law are in derogation of the ordinary principles of private

rights, and, as such, must be subjected to a strict con-
struction, and under the influence of this admission,
will proceed to consider the several questions which
the case presents.

The laws of the State of Maryland derive their
force, in this district, under the first section of the act
of Congress of the 27th of February, 1801. But we
cannot admit, that the section which gives effect to
those laws amounts to a re-enactment of them, so as
to sustain them, under the powers of exclusive legis-
lation, given to Congress over this district. The
words of the act are, "The laws of the State of
Maryland, as they now exist, shall be and continue in
force in that part of the said district, which was
ceded by that State to the United States." These
words could only give to those laws that force which
they previously had in this tract of territory under the
laws of Maryland; and if this law was unconstitu-
tional in that State, it was void there, and must be so
here. It becomes, then, unnecessary to examine the
question, whether the powers of Congress be despo-
tic in this district, or whether there are any, and
what, restrictions imposed upon it, by natural reason,
the principles of the social compact, or constitutional
provisions.

Was this act void, as a law of Maryland? If it was,
it must have become so under the restrictions of the
constitution of the State, or of the United States.
What was the object of those restrictions? It could
not have been to protect the citizen from his own
acts, for it would then have operated as a restraint
upon his rights. It must have been against the acts

of others.   But, to constitute particular tribunals for
the adjustment of controversies among them, to sub-
mit themselves to the exercise of summary remedies,
or to temporary privation of rights of the deepest in-
terest, are among the common incidents of life.  Such
are submissions to arbitration ; such are stipulation
bonds, forth-coming bonds, and contracts of service.
And it was with a view to the voluntary acquies-
cence of the individual, nay, the solicited submis-
sion to the law of the contract, that this remedy was
given.   By making the note negotiable at the bank
of Columbia, the debtor chose his own jurisdiction ;
in consideration of the credit given him, he volunta-
rily relinquished his claims to the ordinary adminis-
tration of justice, and placed himself only in the situ-
ation of an hypothecator of goods, with power to sell
on default, or a stipulater in the admiralty, whose vo-
luntary submission to the jurisdiction of that Court
subjects him to personal coercion.   It is true, cases
may be supposed, in which the policy of a country
may set bounds to the relinquishment of private
rights.   And this Court would ponder long before it
would sustain this action, if we could be persuaded
that the act in question produced a total prostration
of the trial by jury, or even involved the defendant
in circumstances which rendered that right unavail-
ing for his protection.   But a power is reserved to
the judges, to make such rules and orders, " as that
justice may be done ;" and as the possession of judi-
cial power imposes an obligation to exercise it, we
flatter ourselves that in practice, the evils so eloquent-
ly dilated on by the counsel do not exist.   And if

the defendant does not avail himself of the right given him, of having an issue made up, and the trial by jury, which is tendered to him by the act, it is presumable that he cannot dispute the justice of the claim. That this view of the subject is giving full effect to the seventh amendment of the constitution, is not only deducible from the general intent, but from the express wording of the article referred to. Had the terms been, that " the *trial* by jury shall be preserved," it might have been contended, that they were imperative, and could not be dispensed with. But the words are, that the *right* of trial by jury shall be preserved, which places it on the foot of a *lex pro se introducta,* and the benefit of it may therefore be relinquished. As to the words from Magna Charta, incorporated into the constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at length settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice. With this explanation, there is nothing left to this individual to complain of. What he has lost, he has voluntarily relinquished, and the trial by jury is open to him, either to arrest the progress of the law in the first instance, or to obtain redress for oppression, if the power of the bank has been abused. The same answer is equally applicable to the argument founded on the third article of the Maryland constitution.

In giving this opinion, we attach no importance to

the idea of this being a chartered right in the bank. It is the remedy, and not the right; and, as such, we have no doubt of its being subject to the will of Congress. The forms of administering justice, and the duties and powers of courts as incident to the exercise of a branch of sovereign power, must ever be subject to legislative will, and the power over them is unalienable, so as to bind subsequent legislatures. This subject came under consideration in the case of Young and the Bank of Alexandria,ª and it was so decided.

The next question is, whether the Courts of this district are empowered to carry into effect the summary remedy given to the bank in this case?

The law requires the application for process to be made to the clerk of the General Court, or of the County Court for the county in which the delinquent resides, and obliges such clerk to issue the execution, returnable to the Court to which such clerk is attached. Unless, therefore, the clerk of this district is vested with the same power, and the Courts with jurisdiction over the case, the bank would not have the means of resorting to this remedy.

The third section of the act of February, 1801, does not vest in the Courts that power. It only clothes the Courts and judges of this district with the jurisdiction and powers of the Circuit Courts and judges of the United States. But we are of opinion that this defect is supplied by the fifth section of the same act, taken in connection with the fifth

ª 4 *Cranch*, 384.

section of the act of March 3d, 1801. By the former section, the Courts of the district are vested generally with jurisdiction of all causes in law and equity ; and, by the latter, the clerks of the Circuit Court are required to perform all the services then performed by the clerks of the counties of the State of Maryland. Among those services is that of instituting a judicial proceeding in favour of this bank, and the return of that process is required to be to the Court with which such clerk is connected. That Court has jurisdiction of all cases in law arising in this district, and thus the suit is instituted by the proper officer, by writ returnable to a Court having a jurisdiction communicated by terms which admit of no exception.

Upon the whole, we are of opinion that the law is constitutional, and the jurisdiction vested in the Courts of the district; and, therefore, that the judgment must be reversed, and the cause remanded for further proceedings.

Judgment reversed.