# The President, Directors and Company of the Miners' Bank of Dubuque, plaintiffs in error, vs. The United States, on the relation of James Grant, prosecuting attorney, defendant in error.

### Error to Dubuque.

The legislature has an unquestionable right, without judicial investigation, to repeal a bank charter containing a provision "That if said corporation shall fail to go into operation, or shall abuse or misuse their privileges under their charter, it shall be in the power of the legislative assembly of this territory, at any time to annul, vacate and make void this charter."

This was an information in the nature of a quo warranto, filed by James Grant, the district prosecuting attorney, against the plaintiffs in error, requiring them to show by what authority they exercised the power and franchises of a corporation.

To this the defendants below, pleaded the act of incorporation passed by the legislature of Wisconsin, before the erection of the territory of Iowa, approved 30th November, 1836.

To this, the plaintiff below replied, the act of the legislative assembly of the territory of Iowa, entitled "An act to repeal the said charter and to provide for winding up the affairs of the same," passed 10th May, 1845.

To this the defendants below filed a joinder, setting forth that the said act of the legislative assembly of Iowa, was passed without notice to them, and without any evidence of abuse or misuse by them of their corporate powers and privileges.

To this rejoinder, the plaintiffs below filed a demurrer, which was sustained by the court, at November term, 1845.

Errors assigned:

1. That the judgment of the court below, that the demurrer of the plaintiff below, to the rejoinder of the defendants should be sustained, was erroneous, and ought to have been that the same should be overruled.

2. That judgment on said demurrer should have been in favor of the plaintiffs in error, and not the defendant in error.

3. That the judgment in said case should have been rendered in favor

of the plaintiffs in error, and not in favor of the defendant in error, by the court below.

DAVIS & CRAWFORD, for plaintiffs in error, contended:

1. That the charter is a contract, and that one of the provisions of the contract is, that the corporation shall exist twenty years, unless it abuse or misuse its privileges; that the presumption of innocence applies to this case, until there be proof of guilt; and the act repealing the charter is no evidence that there had been abuse or misuse of its privileges.

2. That the inquiry whether there had been such abuse or misuse, is a question for a judicial tribunal, and is not a rightful subject of legislation.

3. That the charter being a contract, the repeal of it without a proper finding of the fact of abuse or misuse, would violate the obligation of the contract, and would consequently be void.

4. That the power of repealing this charter, if possessed at all, is possessed by the Wisconsin legislature; but that even this body cannot, and that it falls back upon the common law.

GRANT & HEMPSTEAD, for defendant in error, replied and contended:

1. That courts cannot go behind the act of the legislature, to enquire into the validity of any law; that courts will look only into the law itself, to ascertain its constitutionality, and will not enquire into the policy and justice of it; that where the courts find a law upon the statute book, it will presume that every thing was done which was required to be done; that if the court is authorized to go behind the act of the legislature in this case, to ascertain whether there was evidence of misuse and abuse of the charter, then it can do so in any other case, and enquire whether the act was passed by the necessary number of votes.

2. That the 12th section of the organic law of Iowa, gives to the legislature of Iowa, the right to repeal this law.

3. That there was no law prohibiting the said legislature from passing said repealing act.

4. That the reservation of the right to repeal the charter was intended to vest that right in the legislative power of the government, under which the bank then was, or might at any time be.

PER CURIAM, MASON, CHIEF JUSTICE.—The validity of the late act of the legislative assembly of this territory, repealing the charter of the Miners' Bank of Dubuque, is brought up now for adjudication. On the

one side it is contended, that all acts of incorporation of this kind may be rightfully repealed, whenever, in the opinion of the legislature, the public good requires it ; that the primary object of the incorporation of a bank, is the public convenience ; that the furnishing of a circulating medium, to serve as money, is a high attribute of sovereignty; that if one legislature has the right to delegate this power, another may resume it, and that a bank is only to be regarded in the same light as a public officer of the government, whose office may be abolished at any time, and the incumbent discharged, by an act of the legislature. On the other it is contended that such an act of incorporation is a mere private contract, and for that reason, placed beyond the reach of hostile legislation.

The power of our legislature being confined to " rightful subjects of legislation," and the bill of rights contained in the ordinance of 1787, having declared that the legislature ought not to interfere with private contracts previously formed in good faith ; such contracts are just as sacred here, as they are under the federal constitution within the States. The principle is well settled in the States, that a public corporation is always under the control of the legislature, but that a private corporation, or a private grant, is protected from legislative encroachment. A public corporation is one created for public purposes, though private rights and interests are often therein deeply involved. The charter of a town or city is none the less subject to the legislative will, from the fact that a change therein, or an absolute repeal thereof, will injuriously affect the individual interests of the corporators.

If, therefore, the primary object in the incorporation of a bank, is the promotion of the public welfare, it is a public corporation, and under the entire control of the public will, as expressed through the legislature. But, if the chief purpose of such charters is the promotion of private interests, and the conferring of favors upon individuals, the analogy of decisions would seem to point to the conclusion that the legislature would not possess the general power of repeal. Some of the adjudged cases go far to sustain the former of these views in relation to bank charters. See Bank of Utica vs. Smedes, 3 Cowen, 684 ; and Young vs. Bank of Alexandria, 4 Cranch, 384, 388.

But whatever difference of opinion may be entertained on this subject, the right of repeal is clearly unquestionable where such right is stipulated for, in the charter itself. Even if it is to be regarded as a private contract, it is certainly no breach of that contract to insist upon, and enforce its own terms and conditions. It is insisted that the stockhol-

ders of the Miners' Bank of Dubuque accepted this charter under such an express stipulation.

The 23d section of that charter provides "that if said corporation shall fail to go into operation, or shall abuse or misuse their privileges under this charter, it shall be in the power of the legislative assembly of this territory, at any time to annul, vacate, and make void this charter." Was it the intention of the legislature by this provision, to reserve to themselves the right of repeal after, by a judicial investigation, it had been ascertained that some of the above mentioned contingencies had happened, or is it, by a fair construction, to be inferred. that they intended to reserve to themselves the power of determining upon the happening of those contingencies? We think the latter the most reasonable interpretation of the language used.

Suppose the bank had failed altogether to go into operation, must there have been a trial by jury to ascertain that fact, before the legislature could repeal the act of incorporation? Or suppose there had been such an abuse or misuse of the privileges granted, as is contemplated by this provision of the charter, how is a judicial inquiry to be instituted? Would the court act as a committee of the legislature for the purpose of collecting evidence, in order to enable the latter to make a decree? Where would it find authority for such a course? All judicial proceedings contemplate final judicial action. If upon the allegation that the contingencies provided for in the above mentioned clause of the charter had happened, and a writ of *quo warranto* were to issue, and the truth of the allegations should be fully sustained, it would be the duty of the court to annul the charter by its own decree, and not stop short while in full career, and turn the case for this purpose over to the legislature. Nor can we presume the legislature to have been guilty of the absurdity of reserving to itself the right to repeal a charter, only after the same had been vacated, and declared null and void, by a decree from the proper court. It is our duty so to construe all statutes as to give force and meaning to all their provisions, where it is possible so to do. The legislature, through its committees, have the means of investigating facts, and we have little doubt, but what by a proper construction of the repealing power above set forth, they reserved to themselves the right to annul the charter of the bank, whenever, through their own appropriate organ, it had been ascertained that any of the contingences therein provided for, had happened. It amounted to an absolute power of repeal, coupled with a legislative pledge that such power should never be exerted only in the cases therein provided.

This view of the case is strengthened by another circumstance.  It is a well known historical fact, that at the passage of this act of incorporation, the unqualified right to repeal any bank charter was warmly contended for by many of the presses and public men in the country. The charter of the bank of the United States had recently been revived by the legislature of the State of Pennsylvania, and had added much to the warmth and importance of the discussion.  It was doubtless for the purpose of setting that question at rest, so far as related to the banks they were about to create, that the legislature of Wisconsin reserved to itself this power of repeal.  Acting within the scope of their authority, their decision is final, and we cannot look behind it.  It follows that the demurrers were properly sustained, and the decree of the District Court is accordingly affirmed.