HARRY L. BEACH *vs.* THOMAS D. BRADSTREET, COMP-
TROLLER.

First Judicial District, Hartford, January Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

The range of legislative power delegated to the General Assembly covers the whole field of legislation, and hence is limited only by the Constitution of the United States and by that of this State.

The sovereign power of taxation, being a natural and necessary incident of the legislative power, resides in the General Assembly by necessary implication, though not conferred in express terms, and its exercise is controlled by and subordinate to the provisions of the Constitution of the United States and that of this State.

The Constitution of the United States, Article Fourth, Section 4, providing that the United States shall guarantee to every State a republican form of government, and the Fourteenth Amendment to the Constitution of the United States, which voids any Act of State legislation in denial of the fundamental law of its land, forbid taxation for any but a public governmental use or purpose.

It is the duty of courts to make every presumption and intendment in favor of the validity of a legislative Act, and to sustain it unless its invalidity is beyond reasonable doubt.

Within reasonable limits the legislative department is the judge of what will constitute public use, and considerations of public policy which determine the wisdom of a legislative Act have no bearing upon the determination of its constitutionality by the courts.

Beach *v.* Bradstreet.

A tax is for a public purpose, if the use of its proceeds be for the support of government, or for any of the recognized objects of government, and will directly promote the welfare of the people of the State in equal measure.

It is the duty of courts to sustain those parts of a statute which are valid and to reject those parts which are invalid, unless the parts are so mutually connected and dependent as to warrant a belief that the General Assembly intended them to stand or fall together as a whole.

Chapter 187 of the Public Acts of 1911 provides that "every person resident in this state who has served in the army, navy, marine corps, or revenue marine service of the United States during the civil war and received an honorable discharge therefrom," and certain pensioned relatives and dependents "resident in this state, . . . shall be paid by the state, as state aid, the sum of thirty dollars each annually," etc. *Held:*—

1. That by this statute those serving in the Civil War as part of the quota of other States, or as aliens, later residing in this State, are entitled to said "state aid" as well as those serving as part of the quota of this State.

2. That it is impossible, without rewriting this statute, to so separate its provisions as to exclude the one class and include the other.

"State aid" is pecuniary support or assistance furnished by the State to its institutions, organizations, or individuals for a public purpose; and as applied to individuals it is a use of public funds for the support of needy citizens, in some cases charity being the moving purpose, and in other, as in this Act, charity coupled with the obligation of gratitude for services rendered, but in no case can the service be disassociated from the necessity.

This court will take judicial notice that not all the resident soldiers and sailors who served in the Civil War, or their immediate relatives and dependents and their pensioned relatives, are in indigent circumstances.

Chapter 187 of the Public Acts of 1911 is unconstitutional for it devotes public funds to other than public uses, in that the grant of "state aid" to those who served to the credit of this State is inseparably connected with that to those who served in the quota of other States and to aliens, and is made without reference to the disability or indigence of the recipients.

A State's bounty must be limited to her own soldiers and sailors.

A tax laid by this State for the benefit of soldiers and sailors of other States is not laid for a public purpose, since Connecticut owes no duty to them.

Whether this State could legally bestow an annual gratuity as a reward for services rendered fifty years ago in the Civil War, to all who served to her credit in the army and navy of the United States,

Beach *v.* Bradstreet.

without regard to disability, age, length of service, or exceptional service, *quœre.*

The case of *Booth* v. *Woodbury,* 32 Conn. 118, distinguished.

Argued January 4th—decided April 9th, 1912.

SUIT for an injunction requiring the defendant, as comptroller of the State, to prescribe regulations looking to the enforcement and execution of chapter 187 of the Public Acts of 1911, providing for the payment of $30 annually by the State to all honorably discharged soldiers and sailors of the Civil War, resident in this State, brought to and reserved by the City Court of Hartford, *Bullard, J.,* upon a demurrer to the complaint, for the advice of this court. *Judgment advised for defendant.*

The complaint sets up these facts: The General Assembly, in Public Acts of 1911, chapter 187, enacted: "Every person resident in this state who has served in the army, navy, marine corps, or revenue marine service of the United States during the civil war and received an honorable discharge therefrom, the widow resident in this state, or if there be no such widow, the widowed mother resident in this state, of every person who has so served and has died either during his term of service or after receiving honorable discharge from said service, and the pensioned widows, fathers, and mothers, resident in this state, of soldiers, sailors, and marines who served in the army, navy, or marine corps, or revenue marine service of the United States during the civil war shall be paid by the state, as state aid, the sum of thirty dollars each, annually, subject to such regulations as to proof of qualifications to receive the same and as to the time and manner of payment thereof and receipt therefor as the comptroller shall prescribe. The exemption from taxation provided by section 2315 of the general statutes and amendments thereof, of the property of pensioned soldiers, sailors, or marines of

the United States, and of persons resident in this state who have served in the army, navy, marine corps, or revenue marine service of the United States, or the widow, or the widowed mother, or pensioned widow, father, or mother of any such person shall not apply to the property of any person entitled to state aid under the provision of this act." The plaintiff is a resident of this State, and served in the army of the United States during the Civil War, and received an honorable discharge therefrom. The defendant comptroller refuses to make regulations for payment under this Act, on the ground that he is advised by the Attorney-General that the said Act is unconstitutional and void.

The defendant demurs upon the ground that said Act is contrary to fundamental principles of natural justice, and in conflict with § 1, of Article First, and Article Twenty-Four of Amendments to, the Constitution of Connecticut, and with § 1, of Article Fourteen, of Amendments to the Constitution of the United States.

*John H. Light,* Attorney-General, for the defendant, in support of the demurrer.

*Alfred B. Beers* and *William F. Henney,* for the plaintiff, in opposition to the demurrer.

WHEELER, J.   The range of powers granted by our Constitution to each department of government is limited by the Constitution of the United States and by that of our State (*McGovern* v. *Mitchell,* 78 Conn. 536, 545, 63 Atl. 433); and whether, as has been so often declared in judicial decision, it is limited by, and to be exercised within, those fundamental principles of natural justice which are held to be the ligament of the social compact upon which all constitutional government rests, we need not now consider.

The delegation of legislative power to our General
Assembly covers the whole field of legitimate legislation.
Hence its power is limited by those "essential principles
of liberty and free government" contained in our Bill of
Rights (Article First, Const. of Conn.). *State* v. *McKee*,
73 Conn. 18, 27, 46 Atl. 409; *State* v. *Conlon*, 65 Conn.
478, 484, 33 Atl. 519.

In this deposit of legitimate power is the great power
of taxation, conferred not in express terms, but in nec-
essary implication, arising from the existence in it of
the legislative power. *Bush* v. *Board of Supervisors*,
159 N. Y. 216, 53 N. E. 1121. For in all constitutional
government the power of taxation is a natural and
necessary incident of the legislative power, since there
can be no lawful taxation without the consent of the
people as represented in the legislature. The exercise of
this sovereign power is not unlimited; it is controlled by,
and subordinate to, the same "essential principles of
liberty and free government" which constitute the con-
dition under which the executive, judicial, and legis-
lative departments of our government can be exercised.

"There is no such thing in the theory of our govern-
ments, State and National, as unlimited power in any
of their branches." *Loan Association* v. *Topeka*, 20
Wall. (U. S.) 655; *State* v. *Travelers Ins. Co.*, 73 Conn.
255, 265, 47 Atl. 299.

Every definition of "taxation" expressly or impliedly
asserts that it is to be imposed only for public purposes.
This is a foundation principle of all constitutional
government. *Loan Association* v. *Topeka, supra; Par-
kersburg* v. *Brown*, 106 U. S. 487, 1 Sup. Ct. Rep. 442;
*State* v. *Collector of Delaware*, 31 N. J. L. 189, 195;
*Opinion of the Justices*, 190 Mass. 611, 77 N. E. 820;
Cooley on Const. Lim. (7th Ed.) p. 696; Miller on U. S.
Const. p. 242; 1 Desty on Taxation (1884 Ed.) p. 14,
§ 8; Judson on Taxation (1903 Ed.) § 346. State taxes

in Connecticut are public burdens imposed by the
General Assembly upon persons or property to raise
money for a public governmental use or purpose. A
republican form of government forbids the raising of
taxes for any but public purposes, and under Article
Fourth, Section 4, of the Constitution of the United
States, Connecticut is forever bound to maintain such
form of government, and cannot exercise legislative
power inconsistent with it. *Allyn's Appeal,* 81 Conn.
534, 537, 71 Atl. 794. Moreover, fundamental rights
existing under and protected by our Constitution are
further protected by the Fourteenth Amendment,
which voids any act of State legislation in denial of the
fundamental law of its land. *State* v. *Travelers Ins. Co.,*
73 Conn. 255, 269, 270, 47 Atl. 299. The unconstitu-
tionality of this Act is rested upon the single specific
ground that it devotes public funds to private ends.

Our treatment of a question such as this, involving the
act of a co-ordinate department of government, should
not be circumscribed by the limitations of ordinary
actions between individuals. We should not be un-
mindful of Marshall's admonition, "It is a Constitution
we are expounding." It is our duty to approach the
question with great caution, examine it with infinite
care, make every presumption and intendment in its
favor, and sustain the Act unless its invalidity is, in
our judgment, beyond reasonable doubt. *McGovern* v.
*Mitchell,* 78 Conn. 536, 545, 63 Atl. 433; *Young* v.
*Lemieux,* 79 Conn. 434, 441, 65 Atl. 436, 600; *State* v.
*Brennan's Liquors,* 25 Conn. 278, 289; *Hartford Bridge
Co.* v. *Union Ferry Co.,* 29 Conn. 210, 227; *Wilton* v.
*Weston,* 48 Conn. 325; *Wellington, Petitioner,* 16 Pick.
(Mass.) 87, 95; *Atchison, T. & S. F. R. Co.* v. *Matthews,*
174 U. S. 96, 19 Sup. Ct. Rep. 609.

We cannot impute to the legislative department the
disregard of a fundamental principle of civil liberty and

free government except in clearest case. *Allyn's Appeal*, 81 Conn. 534, 536, 71 Atl. 794. Nor must we be unmindful that within reasonable limits the legislative department is the judge of what will constitute a public use, and that the wisdom of its Act is not our concern. Considerations of public polity which might, and perhaps should, make their appeal to the practical judgment of the legislative body, are not relevant to our determination and must not be permitted to influence our decision. *In re Powers*, 25 Vt. 261, 265. Acting within these principles of constitutional construction, the judiciary must decide, in cases properly arising, whether the legislative department has exceeded its constitutional power. It, in its sphere, represents the people as much as does the legislative department, and it can serve the community in no higher or truer way than in doing its constitutional duty.

Some years ago a writer in the Harvard Law Review (Vol. 12, p. 316) presented the results of his examination of the legislation of Massachusetts for the preceding twenty-five years, and made it plain that there had been in that period hundreds of instances involving hundreds of thousands of dollars of the public funds voted in gratuities clearly contrary to the Constitution, although few instances had been tested in the courts. In the instances where the vote of gratuities had been before her courts, they had sturdily upheld the Constitution. Massachusetts' experience does not stand alone among the States. We are to decide whether the expenditure of public funds to be raised by taxation, as called for by this Act, is for a public purpose or not.

If the use of the proceeds of the tax be for the support of government, or for any of the recognized objects of government, the tax is considered to be for a public purpose. Gray on Limitations of Taxing Power (Ed. 1906) § 169. If the proceeds of the tax will directly

promote the welfare of the community in equal measure, the tax is for a public purpose. *State* v. *Cleveland*, 58 Me. 564 (opinion of Tapley, J., p. 617).

The test of the Act before us is: Will it serve a recognized object of government, and will it directly promote the welfare of the people of the State in equal measure?

The Act includes two classes, to the members of which $30 a year shall be paid as State aid: (1) Those resident in the State who served in the army, navy, marine corps, or revenue marine service of the United States during the Civil War as a part of the quota of this State and received an honorable discharge therefrom, the widow resident in this State, or if there be no such widow, the widowed mother resident in this State, of every person who has so served and has died either during his term of service, or after receiving honorable discharge, and the pensioned widows, fathers, and mothers, resident in this State, of such soldiers, sailors, and marines. (2) Similarly described persons who served as a part of the regular army or navy, or as a part of the quota furnished by other States than Connecticut and who have since gained, or shall hereafter gain, a residence in this State, and similarly described widows, widowed mothers, pensioned widows, fathers, and mothers, who have since gained, or shall hereafter gain, such residence.

All who served in the quotas of other States, whether residents of those States or aliens, or citizens and aliens enlisting in the army or navy of the United States and credited to the quota of no State, come within the benefits of the Act, as do their widows, widowed mothers, and their pensioned widows, fathers, and mothers.

If every living soldier and sailor, and the living widows, widowed mothers, and the pensioned widows, fathers, and mothers of those who served in the Civil War and received honorable discharge, and who served

as a part of the quota of this State or any other State, or in the army and navy of the United States and not credited to any State, are now, or hereafter were to become, residents of this State, such "state aid" must be furnished them equally with those who now reside in our State and served to its credit in the Civil War.

Those who served to the credit of the State who reside outside its limits are denied the benefits given those who did not serve to her credit but who have since become residents. It applies equally to the drafted, as to the volunteer; to those who received a bounty, as to those who did not; to those who were disabled, as to those who were not; to those who are in receipt of pensions, or other governmental favor, as to those who are not; to those who served a few days, as to those who served for the entire war. It limits its bounty neither by age, by disability, nor by necessity, except so far as this may be read in the term "state aid."

If some part of this Act were valid, and other parts invalid because unconstitutional, it would be our duty to sustain the valid part, unless the parts were "so mutually connected and dependent as to warrant a belief that the legislature intended them to stand or fall together as a whole." *Branch* v. *Lewerenz*, 75 Conn. 319, 324, 53 Atl. 658; *State ex rel. Mathewson* v. *Dow*, 78 Conn. 53, 56, 60 Atl. 1063; *State* v. *Wheeler*, 25 Conn. 290.

If it could be held that it was within the power of the General Assembly to grant such State aid to those serving in the Civil War as a part of the quota of this State, while not within its power to grant such aid to those serving as part of the quota of other States, or as aliens, we should be unable to so separate the provisions of the statute as to include the one class and exclude the other. The Act contains a single provision, and that relating to "state aid" is in a single sentence.

Neither by the exclusion or addition of a word or words could this separation be made, but only by rewriting the statute.  Its language is clear and specific; it must be read as it is written.  We think these several provisions are mutually connected and dependent, and that the General Assembly intended that they should stand or fall together.  Our conclusion is strengthened by two considerations:  One, that the General Assembly had theretofore granted its bounty only to those, or their dependents, who had served in the Civil War to the credit of the State; the other, that the plaintiff has not suggested the possibility of making this separation.  It is not alleged in the complaint that the plaintiff was a resident of this State when he enlisted, or that he served as a part of the quota of this State.

Payments under this Act are made as "state aid." The ordinary definition of aid is help, support, or assistance. · State aid is support or assistance furnished by the State to its institutions, organizations, or individuals for a public purpose.  It is a term of our statutes, applied to pecuniary assistance furnished by the State to towns, schools, etc., and for internal improvements—all recognized public purposes.  We also find this term applied to support, pecuniary or otherwise, furnished indigent children of the soldiers and sailors of the Civil War.  In other States we find a similar designation and use of this term.  For example: In Massachusetts a very comprehensive system of State and military aid is maintained.  A condition of its granting is the indigence of the applicant.  The State may use the public funds to support its citizens in need; it cannot use the public funds as State aid to support its citizens not in need.  As applied to individuals, State aid can have no meaning other than support for the needy.  Undoubtedly there is a distinction between support furnished under this statute and that under a

pauper statute. *Manchester* v. *Burns*, 45 N. H. 482. In the one, charity is the moving purpose; in the other, charity coupled with the obligation of gratitude for services rendered. The service cannot be disassociated from the necessity. Had this been the intent, the specification of the gratuity as "state aid" would have been unnecessary.

The court must take judicial notice that not all the resident surviving soldiers and sailors of the Civil War, or their immediate relatives and dependents and their pensioned relatives, are in indigent circumstances. The veterans of the Civil War have held, and now hold, a conspicuous part in the life of our State, and contribute in wealth, in intellect, and in morality largely to the strength of the Commonwealth.

State support furnished as State aid indiscriminately to all of these classes, to the needy, and to the well to do, is beyond the power of legitimate legislation. We know of no State legislation where "state aid" has been granted without reference to disability, necessity, age, or exceptional service.

No public purpose is subserved by taking by taxation the property of the many and giving it, under the guise of State support, to those who are out of reach of its need.

It was, we think, appreciation of the force and applicability of this principle which led the plaintiff, in the argument, to assume that the single inquiry here was whether the State could reward the soldiers and sailors of the Civil War, and their immediate relatives and dependents, because of their meritorious service, without regard to disability or indigence. If this were indeed the sole question before us, we should still be obliged to hold the Act void.

We have sustained legislation authorizing bounties, and legislation ratifying the action of a town in voting

bounties where service in the army or navy of the United States, or the procuring of a substitute for such service, has been made on the faith of the promise of the bounty. We have refused to sustain such legislation, enacted after the performance of the service, making the bounty a mere gratuity for past services not rendered on the faith of its promise. *Usher* v. *Colchester*, 33 Conn. 567; *Terrett* v. *Sharon*, 34 id. 105. We have never had before us the question whether the State might reward, by annual payment, meritorious service rendered in the Civil War.

The justices of the Supreme Court of Massachusetts (*Opinion of the Justices*, 190 Mass. 611, 615, 77 N. E. 820) have expressed the opinion that moneys may be paid, statues erected, medals, decorations, or other badges of honor bestowed by the State to her citizens who had served to her credit in the army of the United States, as an appropriate recognition of distinguished and exceptional service, such that the dignity of the State will be enhanced and the loyalty and patriotism of the people will be promoted by making it a subject of government action. The justices are careful to mark the distinction between a reward of this character and the bestowal of a pension. Thus they say: "So far as we have been informed, since the adoption of the federal constitution, none of the states has assumed to grant pensions to soldiers for service in the armies of the United States. For such purposes it is generally understood that our government is the federal government; but for many purposes, and in a certain field, Massachusetts is a sovereign state, maintaining an independent government." Again, that court said: "When military pensions are granted, it is fitting that they should be given by the government in whose army the soldiers served." *Opinion of the Justices*, 186 Mass. 603, 607, 72 N. E. 95.

The expressed purpose of the Act before us is not a single, nor a yearly, reward for past distinguished and exceptional service, nor for meritorious service, nor as a pension for service, but is given annually as "state aid." We cannot construe it otherwise, unless we depart from the legislative language and intent. The Act, as we have pointed out, bestows "state aid" upon all who served in the army and navy of the United States, to those who did not serve to her credit and who are not related to those who did serve to her credit, as well as to those who served to her credit or are related to those who did so serve.

Whether or not Connecticut could bestow an annual gratuity as a reward for services rendered fifty years ago in the Civil War to all—both the drafted and the volunteer—who served to her credit in the army and navy of the United States, without regard to disability, necessity, age, length of service, or exceptional service, we do not determine. The case does not require it. The justification for such legislation, if found at all, must be in its public purpose, and that in its incitement to patriotism.

The grant of "state aid" to those who served to the credit of the State is, as we have seen, inseparably connected with that to those who served in the quota of other States and to aliens. We construed an Act of legislation granting bounties, as we should do in this case if possible, so as to avoid the objection that it applied in terms to others than those who served as a part of the quota of this State, impliedly suggesting the difficulty of supporting the Act if held applicable to those serving in the quotas of other States. *Baldwin* v. *North Branford,* 32 Conn. 47, 54, 55; *State* v. *Newark,* 29 N. J. L. 232, 243. The nation can take for its defense the men and the treasure of Connecticut measured only by its necessities. It can call upon her to do her as-

signed part; it cannot call upon her to do the assigned part of some other State. The soldiers and sailors of other States, and the aliens, who served, were not hers; to them she owed no duty. She could not tax her people to pay bounties to these to induce them to enter the service of the United States; no more can she reward them for their services in the war.

The purposes of taxation must be kept within the range of subjects which bring to the State a direct benefit. The taxation of Connecticut people for some internal improvement in Kansas would universally be recognized as outside the scope of legitimate legislative power. In principle there is no difference between a tax levied for such an object and one to reward the soldiers and sailors who helped make up the quota of Kansas in the Civil War. Her soldiers and sailors served under the Constitution to which she owed allegiance, but they served to the credit of Kansas, and for her, as much as though they had fought under her own enlistment to repel an invader on her own soil. Connecticut's interest in such service was indirect, and identical with that resulting from the services of the quotas of every other State. That the soldiers and sailors who filled the quotas of other States must reside in this State to secure "state aid" does not change the situation. A State's bounty must be limited to her own soldiers and sailors. Service to the credit of other States is not service for her. The grant to aliens, to widows and parents, to pensioned widows and parents, without affecting the principle involved, marks with increasing clearness the lengths to which a vicious principle of taxation may lead. Cooley, in his work on Taxation (Vol. 1, 3d Ed.), p. 195, says: In deciding on which side the tax shall fall we must be governed "mainly by the course and usage of the government, the objects for which taxes have been customarily and by

long course of legislation levied, what objects or purpose have been considered necessary to the support and for the proper use of the government."

Far from there being a course and usage sanctioning this attempt to tax the people of one State for the services rendered in the Civil War by the soldiers and sailors of another State, we find no attempt of like character either in Connecticut or in any other State of the Union. Objects and purposes such as these have never been regarded as serving a public use. In the long span of time since the Civil War closed, the national government has, in pensions granted and privileges extended, treated those who served her in her hour of peril with generosity. So too, in many ways, the States have exhibited their gratitude, and our State has been among the foremost in this labor of duty and of love. States have granted pensions to the disabled or indigent soldiers and sailors; but, so far as we have discovered, no State has granted a pension to soldiers and sailors who have served in, and been honorably discharged from, the United States service, without regard to disability or indigence.

*Booth* v. *Woodbury*, 32 Conn. 118, upon which the plaintiff relies, is not an authority for the giving of a gratuity or bounty for services rendered after the passage of the Act; in that case the service was rendered before the passage of the Act.

We believe no Act of so sweeping a character can be found. We think an Act which taxes the citizens of our State for the benefit of persons whose only claim to a gratuity is in service long since past, rendered some other State, is a dangerous innovation in legislation and beyond all doubt contrary to the fundamental law. If an annual gratuity of $30 for such a purpose as this is lawful, a larger one will be lawful. Its size will be the will of the General Assembly. If public

funds may be used to benefit resident soldiers and sailors for past services, rendered other States, the principle will permit gratuities to be given all classes of citizens whose past public services entitle them to public gratitude. "If the body of persons to be benefited is numerous, the greater is the influence that may probably be brought to bear to secure such an appropriation of the public money." *Kingman* v. *Brockton*, 153 Mass. 255, 258, 26 N. E. 998. The right of private property should, and does, rest upon a firmer basis than this. A public purpose is indispensable to a legitimate exercise of the taxing power; "though the people support the government, the government should not support the people."

The City Court of Hartford is advised to sustain the demurrer on grounds two and four, and to render judgment for the defendant.

No costs in this court will be taxed in favor of either party.

In this opinion the other judges concurred.