THE STATE OF CONNECTICUT EX REL. JOEL L. BRUSH *vs.* SIXTH TAXING DISTRICT ET. ALS.

JOEL L. BRUSH ET AL. *vs.* THOMAS ROBINS ET AL.

Third Judicial District, Bridgeport, October Term, 1925.
WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, JS .

In quo warranto proceedings against a taxing district to test the constitutionality of the statute creating it, the persons elected as commissioners of the district should not be joined as defendants,

The State *ex rel.* Brush *v.* Sixth Taxing District.

since any action taken against them implies that the offices which they hold have a legal existence.

The provisions of the Fourteenth Amendment to the Constitution of the United States, guaranteeing the equal protection of the laws and due process of law, have the same meaning as the corresponding provisions contained in §§ 1 and 12 of Article First of our Constitution and, therefore, impose no new limitation upon the power of the people of this State to determine their civil rights by their fundamental law.

The entire legislative power of this State, including the power to tax, is vested in the General Assembly, subject only to the limitation that it be exercised in a manner consistent with a republican form of government and in conformity to the Federal and State constitutions.

The constitutional requirement of equal protection of the laws is fulfilled when all persons similarly situated are accorded equal protection under the law in the enjoyment of rights belonging to all.

Due process of law is but another name for process according to the law of the land. It is intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of right and justice; and it embraces any legislative action which is within the limits of legislative authority and is conformable to such principles and to the constitutional safeguards.

The General Assembly has the power to create a taxing district, to define its limits and to declare its purposes, and its action in these respects will not be held to constitute a denial of due process or of equal protection of the laws unless it is palpably arbitrary and a plain abuse of these constitutional provisions.

It is no objection to the validity of a statute establishing a taxing district, that some of the land included therein will not receive a direct benefit.

It is the duty of the courts to make every presumption and intendment in favor of the validity of a legislative Act and to sustain it unless its invalidity is established beyond a reasonable doubt.

There is no provision in either State or Federal constitution requiring State taxation to be equal and uniform.

The present case was reserved for the advice of this court upon an agreed statement of facts from which it appeared that by the Special Laws of 1921, page 660, all the electors within a designated portion of the city of Norwalk were constituted a body politic, to be known as the Sixth Taxing District, for the purpose of providing for that section of the city needed civic improvements such as street-lights and sewers, out of funds to be raised by the taxation of the inhabitants and property within* the

The State *ex rel.* Brush *v.* Sixth Taxing District.

district; and that by the terms of the Act there was excluded from the area of the district certain property owned or leased by the Connecticut Company and the Roton Point Improvement Company and maintained as an amusement park for the free use of the public. It was further alleged in the complaint that this excluded property was surrounded by, and similarly situated to, the other property embraced within the district, and that its value was equal to that of the most valuable properties in the district; but these allegations were denied and were not incorporated in the agreed statement of facts. *Held:*

1. That, upon the facts presented to this court, there was no basis for the claim that the exclusion of the property in question was so arbitrary as to invalidate the Act, since it placed no additional or unfair burden upon the inhabitants or property within the district, nor did it constitute an abuse of the discretion which the legislature exercises in determining the proper area of taxation for civic improvements.

2. That this result would not be altered by considering the additional allegations in the complaint, for it would still appear, that, under all the circumstances, including the semi-public nature of the property and the fact that its owners furnished their own lighting facilities, the legislature was acting reasonably in excluding it from the district.

Argued November 10th, 1925—decided February 23d, 1926.

INFORMATION in the nature of quo warranto to determine by what authority defendants claim to use and enjoy the rights and franchises of the Sixth Taxing District of the City of Norwalk, and to declare the Act creating the District unconstitutional; and

SUIT by the plaintiffs, Brush *et als.*, as residents and property owners in the District, to enjoin defendants from laying or levying upon plaintiffs any tax or assessment, or from incurring any debts or obligations against them or their property, brought to the Superior Court in Fairfield County and reserved (*Banks, J.*), upon an agreed statement of facts, for the advice of this court, and by stipulation of the parties argued in this court together.

*Edward J. Quinlan,* for the plaintiffs.

*William F. Tammany,* with whom, on the brief, was *John J. Cuneo,* for the defendants.

WHEELER, C. J.    The joining of the commissioners of the sixth district as parties to the action brought by the State on the relation of Brush was improper.    The legality of the existence of the district could be tried by an information against the district, but not in an action upon an information against the persons elected as commissioners of the district, since an action in their behalf implies that the office held by them is a legally existing office.    *State ex rel. Woodford* v. *North,* 42 Conn. 79, 86.    We point out the irregularity in the interest of good practice.    It does not affect the questions which are reserved for our advice, viz.: whether the Act creating this district is unconstitutional and void because it denies to the inhabitants of the district the equal protection of the law and due process of law. These constitutional guarantees are found in Article First, §§ 1 and 12, of our Constitution, and in the Fourteenth Amendment to the Constitution of the United States.    Their meaning in our Constitution has not been restricted by the Federal Constitution.    In each they have a like meaning.    In *State* v. *Travelers Ins. Co.,* 73 Conn. 255, 270, 47 Atl. 299, referring to *Slaughter-House Cases,* 83 U. S. (16 Wall.) 36, and *Maxwell* v. *Dow,* 176 U. S. 581, 20 Sup. Ct. 448, 494, we say: "The reasoning of these two leading cases excludes the idea that the Fourteenth Amendment placed any new limitations on the power of the people of the States to determine their civil rights by their fundamental law."    The amendment to the charter of the city of Norwalk creating the sixth taxing district will be better understood if we have before us the method of creation and the purposes of the five districts existing prior to this amendment.    The town of Norwalk was

consolidated with the cities of Norwalk and South Norwalk and the East Norwalk Fire District, and the city of Norwalk incorporated. 16 Special Laws (1913) page 1038. Speaking generally and without attempting to go into detail, by this Act the city was divided into five taxing districts. The first comprises the territory constituting the former city of Norwalk, and the Act provides that "all the inhabitants and property within the limits" of this district "shall be liable to taxation to defray any burdens, expenses, and liabilities of the former city of Norwalk," and in addition, "such other liabilities" as it "may incur under this Act." The second comprises the territory constituting the former city of South Norwalk, and all the inhabitants and property within the limits of this district, the Act provides, shall be liable to taxation to defray the burdens and expenses of the former city, and such additional liabilities as the district may become liable for under the Act. The third comprises the territory constituting the former East Norwalk fire district, and all the inhabitants and property within the limits of the district, the Act provides, shall be liable to taxation to defray any burdens, expenses, and liabilities of the former fire district, and such other liabilities as the district may incur under the Act. The fourth comprises the territory constituting the first, second and third wards, which are the first, second and third taxing districts. The city shall maintain at the expense of the fourth district, the Act provides, the sewer systems, and the police and fire departments as existing in the former cities of Norwalk and South Norwalk and the East Norwalk fire district, until the city shall establish and maintain a police and fire department for this district. The fifth comprises all the territory of the city, that is, of the town of

Norwalk. All the property of the town is transferred by the Act to the city, and § 6 of the Act provides:

"Sec. 6. All burdens and expenses imposed by law upon the town of Norwalk for the conduct of elections, the care and support of poor, insane, and imbecile persons, the construction and maintenance of highways and bridges, the support of schools, the construction and maintenance of public buildings, the prosecution of criminal offenses, the payment of principal and interest of the town debt, the payment of state, military, and county taxes, and for all other purposes for which towns are liable, shall be borne by said city and shall be payable out of the treasury of said city, and said city shall hereafter perform all the duties and have and exercise all the rights, powers, and privileges conferred upon said town, and all laws imposing such duties, burdens, and expenses and conferring such rights, powers, and privileges upon said town are hereby made applicable to said city."

The first, second and third districts comprise the more settled parts. The fifth comprises the entire city, including the territory covered by the first, second and third districts as well as the territory of the town lying outside of these districts. It is apparent from the list of burdens imposed upon the entire city under § 6, that civic improvements, such as lighting, sewers and the like, were not provided for the fifth district in this Act. It included the outlying portions of the town, in which the demand or necessity for such public improvements had either not yet arisen or not become urgent. Eight years later the General Assembly created a sixth taxing district out of a part of the fifth district which lay southerly of the territory of the second district or the former city of South Norwalk. All the electors within the territorial limits of the district are by the Act constituted a body politic

and corporate for the purpose of contracting for street-lighting, sewers, or any other needed civic improvements, including the Rowayton public library. Section 3 of the Act (18 Special Laws (1921) p. 660) provides: "All inhabitants and property within the limits of the sixth taxing district shall be liable to taxation to defray any expenses or liability said taxing district may incur under the provisions of this Act."

In general the creation of the sixth taxing district is in form and manner substantially that of the first, second and third districts. "The Legislative power of this state" is vested by our Constitution in the General Assembly. Article Third, § 1. By this Article, Connecticut placed her entire legislative power in the hands of the General Assembly, subject only to the limitations that it should be exercised in a manner "consistent with a republican form of government," and in conformity to the Constitution of Connecticut and of the United States. *Allyn's Appeal,* 81 Conn. 534, 536, 71 Atl. 794.

The Act we are asked to declare unconstitutional involves the exercise of the taxing power. "The taxing power is an inherent attribute of sovereignty and as such unlimited in character and scope save as limitations may be self-imposed. Under our form of government its exercise is vested in the legislative department which may exercise it for lawful purposes in its discretion both as regards the choice of subject-matter of taxation and the extent and manner of the tax, save as constitutional limitations may intervene, and in the case of the States save also as the property and agencies of the national government within their borders are not within the reach of their sovereignty." *State* v. *Murphy,* 90 Conn. 662, 666, 98 Atl. 343. The city of Norwalk had no inherent power. Its charter, of which this Act was an amendment, was a delega-

tion of power from the legislative body of the State. The General Assembly may create municipalities at will, and divide their territory into taxing districts at will, subject only to the limitations of State and Federal constitutions. It may determine the area of territory to be included in the district, the improvements for which the district may levy taxes and the area benefited by the improvements. "When the State court decides that municipal corporations within the territorial limits of the State are subject to the control of the State legislature, and that its act in creating for certain purposes a new corporation, and merging therein five separate towns, was valid, this court cannot hold that the State court was mistaken in its construction of the State constitution or in its declaration as to the extent of the power of the legislature over municipal corporations. Neither can it be doubted that, if the State constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed improvement." *Williams* v. *Eggleston,* 170 U. S. 304, 311, 18 Sup. Ct. 617. In *Houck* v. *Little River Drainage District,* 239 U. S. 254, 262, 36 Sup. Ct. 58, the court says. "The legislature, unless restricted by the State constitution, can create such districts directly, or, as in this case, it may provide for their institution through a proceeding in the courts in which the parties interested are cited to appear and present their objections, if any." See also *Valley Farms Co.* v. *Westchester,* 261 U. S. 155, 43 Sup. Ct. 261; *Spencer* v. *Merchant,* 125 U. S. 345, 355, 8 Sup. Ct. 921; *Wagner, Inc.* v. *Baltimore,* 239 U. S. 207, 36 Sup. Ct. 66; *Branson* v. *Bush,* 251 U. S. 182, 189, 40 Sup. Ct. 113; *Norwood* v. *Baker,* 172 U. S. 269, 278, 19 Sup. Ct. 187; *Consolidated Land Co.* v. *Tyler,* 88 Fla. 14, 101

So. 280; 5 McQuillin on Municipal Corporations, § 2052, and cases cited.

The General Assembly, having unquestionably the power to create the sixth taxing district, our next inquiry must be, does this particular Act violate the constitutional requirements that it shall accord the equal protection of the laws and due process of law? The equal protection of the laws is accorded when all persons similarly situated are accorded "equal protection under the law in the enjoyment of rights belonging to all." *State* v. *Travelers Ins. Co.,* 73 Conn. 255, 269, 47 Atl. 299; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 369, 6 Sup. Ct. 1064; *Grissell* v. *Housatonic R. Co.,* 54 Conn. 447, 9 Atl. 137. We shall, when we consider the facts, see that this Act does not violate this constitutional provision. Due process of law is another name for process according to the law of the land. Due process of law is "that law of the land in each State, which derives its authority from the inherent and reserved powers of the State, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure." *Hurtado* v. *California,* 110 U. S. 516, 527, 535, 4 Sup. Ct. 111, 292; *Allyn's Appeal,* 81 Conn. 534, 537, 71 Atl. 794. "It does not necessarily imply a judicial process, or proceedings after the established method of courts. On the contrary, legislative action within the limits of legislative authority and conformably to constitutional safeguards and established principles is the law of the land." *Water Commissioners* v. *Johnson,* 86 Conn. 151, 162, 84 Atl. 727. Due process in this case is a legislative action subject to the Constitution and laws of this State and not contrary to the' Constitution of the United States

or any law or treaty of the United States. *French*
v. *Barber Asphalt Paving Co.,* 181 U. S. 324, 331, 21
Sup. Ct. 625.   Mr. Justice Johnson, in *Bank of Colum-bia* v. *Okely,* 17 U. S. (4 Wheat.) 235, 244, declared
that "the good sense of mankind has at length settled
down to this: that they [the words, due process of law]
were intended to secure the individual from the arbi-trary exercise of the powers of government, unre-strained by the established principles of rights and dis-tributive justice."   We adopted this as the true mean-ing of "due process of law," in *Camp* v. *Rogers,* 44
Conn. 291, 297.

A taxing district organized for drainage purposes, it
was held in *Houck* v. *Little River Drainage District,*
239 U. S. 254, 262, 36 Sup. Ct. 58, cannot be assailed
under the Fourteenth Amendment "unless it is palpa-bly arbitrary and a plain abuse.   These principles
have been established by repeated decisions."   In
*Miller & Lux, Inc.* v. *Sacramento & S. J. Drainage Dis-trict,* 256 U. S. 129, 130, 41 Sup. Ct. 404, the opinion
states: "Since *Houck* v. *Little River Drainage District,*
239 U. S. 254, 36 Sup. Ct. 58, the doctrine has been
definitely settled that in the absence of flagrant abuse
or purely arbitrary action a State may establish drain-age districts and tax lands therein for local improve-ments, and that none of such lands may escape lia-bility solely because they will not receive direct bene-fits."   See also *Valley Farms Co.* v. *Westchester,* 261
U. S. 155, 162, 43 Sup. Ct. 261; *Branson* v. *Bush,* 251
U. S. 182, 190, 40 Sup. Ct. 113; *Norwood* v. *Baker,*
172 U. S. 269, 278, 19 Sup. Ct. 187.   The same test to
determine whether the Act creating the district is un-constitutional has been adopted by the State courts
of which we cite a few of the later cases.   *Consoli-dated Land Co.* v. *Tyler,* 88 Fla. 14, 101 So. 280, 281;
*Pauly* v. *Keebler,* 175 Wis. 428, 430-432, 185 N. W.

554, 556; 5 McQuillin on Municipal Corporations, § 2052 *et seq*.

While we have never had this precise question before us, we have recognized this test in related matters claimed to be unconstitutional; *State* v. *Murphy*, 90 *Conn*. 662, 668, 98 Atl. 343; and we applied this test to a statute to determine whether it was so purely arbitrary as to be prohibited by the Fourteenth Amendment. *Bankers Trust Co.* v. *Blodgett*, 96 Conn. 361, 371, 114 Atl. 104. We adopt this as the test to determine whether this Act denies the equal protection of the law and due process of law. Our final task is to search the facts upon which the case has been reserved, to ascertain whether it is palpably arbitrary and a plain abuse of these constitutional provisions. The only facts stated in the reservation upon which a claim of the arbitrary character of the Act must rest are: the fact that the Act excluded from the area of the newly-created sixth taxing district the property owned or leased by the Connecticut Company and the Roton Point Improvement Company, consisting of fifty acres, forty-three of land area and seven of water area, compared to the adjoining acreage of the sixth taxing district of about five hundred and twenty-nine acres of land and sixty-one of water area, and that the property excluded was of the assessed value of $97,000, while that of the sixth taxing district was $1,947,354, and the fact that there were a few lots which were not excluded near the southeastern portion of this district which projected into the excluded territory and were nearly surrounded by it. The allegation was made in plaintiffs' complaint that the property so excluded from the district by the Act is surrounded and similarly situated to the other property embraced within the district and among the most valuable of the properties within the district. We presume it was

intended by this latter allegation to say that the excluded area was equal in value to that of the most valuable portions of the area within the district, since by the terms of the Act the excluded area never became a portion of the district. These allegations were denied in the answer and are not found among the facts agreed to upon which this reservation is taken. There is upon these facts no basis for the claim that this exemption was so arbitrary as to void the entire taxing district Act by violating the constitutional guarantees of the equal protection of the laws and due process. The purpose for the existence of this taxing district is to give to the inhabitants of the area within it the opportunity to provide for civic improvements, such as lighting and sewers. The benefits from these will not be shared by those in the area excluded, and the taxation to provide these will be met by taxation upon the inhabitants and property within the district. There is no discrimination against any of the inhabitants or property within the district. What the district raises by taxation is expended in the district; if the provisions of the Act are carried out in accordance with its purposes, all will be in one class and upon a plane of equality. If the area excluded were within the district, it and its inhabitants would share in the benefits for which taxation was imposed. So far as the facts of record show, there was no additional burden imposed upon the inhabitants and property within the district in consequence of this excluded area. It is reasonable legislation to exclude from the area of taxation for civic improvements, an area which in character and population does not require these, or whose public benefit and burden would be out of proportion to their public cost and maintenance. In determining the proper area of taxation for civic improvements, mistakes will occur and injustice be done in some de-

gree, and as conditions change and population grows the injustice to an area taxed for civic improvements by having contiguous territory similarly situated untaxed, will increase. These are matters for the legislative discretion, not for judicial determination, unless the legislation be palpably arbitrary. "There is no provision in either State or Federal Constitution requiring that State taxation should be equal and uniform." *State* v. *Murphy,* 90 Conn. 662, 668, 98 Atl. 343. Had the fact alleged, that the area excluded was similarly situated to the area within the district, been among the facts agreed upon, this would not have rendered this Act palpably arbitrary. The facts indicate what may have been the legislative reason for excluding this area. The Roton Point Improvement Company, the lessee of the greater part of the excluded area, maintains upon it an amusement park to which the public is invited and to which no admission is charged. It affords a playground and pleasure resort for the people of Norwalk and adjoining towns, and the lessee of this park maintains its own lighting plant. Upon the excluded area not so leased and belonging to the Connecticut Company, the latter maintains a set of tracks with a turn at the entrance to the park, thus providing transportation to this park. Under these circumstances, the General Assembly may have concluded that since this lessee did not require the use of the lighting to be provided for this district, and since its area was devoted to park and amusement purposes and not to land development, and although maintained for private interest, in reality served a large public interest, it was not unreasonable to exclude the area from the operation of this taxing act and leave it subject to the general taxes imposed upon the entire city under the fifth district, and so continuing to treat it as all outlying areas are treated

by the Consolidation Act. If this was the legislative purpose, we cannot hold that its exercise was arbitrary, nor could we hold, if that was within our province, that the Act was unwarranted. *Water Commissioners* v. *Johnson,* 86 Conn. 151, 162, 84 Atl. 727. We cannot substitute our judgment, though it might not accord with the legislative will, for that of the General Assembly. A judicial holding that a legislative Act is unconstitutional is one of very grave concern. We ought not, and will not, declare a statute to be unconstitutional unless our judgment is formed in the light of this rule of our law: "It is our duty to approach the question with great caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond reasonable doubt." *Beach* v. *Bradstreet,* 85 Conn. 344, 349, 82 Atl. 1030. This Act in question could not be held to be unconstitutional if this rule of law were observed.

The questions upon which our advice is asked are not in proper form; they cannot be answered categorically.

The Superior Court is advised that we answer questions one to six inclusive, that the Act creating the Sixth Taxing District of the City of Norwalk (18 Special Laws (1921) page 660) is not unconstitutional as denying the equal protection of the laws or due process of law under Federal or State constitution, to the residents, inhabitants and taxpayers of the district.

In this opinion the other judges concurred.