STATE OF CONNECTICUT *v.* ANTHONY P. ZAZZARO.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued April 3—decided June 26, 1941.

*William S. Hyde* and *Edwin M. Ryan,* with whom, on the brief, was *Nicholas E. St. John,* for the defendant.

*Hugh M. Alcorn,* state's attorney, with whom were *Hugh Meade Alcorn, Jr.* and *John P. Hodgson,* assistant state's attorneys, for the state.

ELLS, J. The defendant is charged in thirteen counts with violations of § 968e of the Cumulative Supplement, 1939, quoted in full in the footnote,[1] the

---

[1] Sec. 968e. No backer or permittee of one class shall be a backer or permittee of any other class except in the case of railroad and boat permits. No permittee or backer thereof and no employee or agent of such permittee or backer shall borrow money or receive credit in any form for a period in excess of thirty days, directly or indirectly, from any manufacturer permittee, or backer thereof, or from any wholesaler permittee, or backer thereof, of alcoholic liquor or from any member of the family of such manufacturer permittee or backer thereof or from any stockholder in a corporation manufacturing or wholesaling such liquor and no manufacturer permittee or backer thereof or wholesaler permittee or backer thereof or member of the family of either of such permittees or of any such backer, and no stockholder of a corporation

alleged offenses being that he, a stockholder in a brewing company, extended credit for a period of more than thirty days, through various banks in Hartford, to designated holders of retail liquor permits issued by the liquor control commission. The charges are set forth in the information substantially in the language of the statute. There is involved a construction of § 968e, and the applicability of § 1083c of the Cumulative Supplement, 1935, also quoted in full in the footnote.[2] The defendant's claims, as raised by his demurrer, fall into several categories and the questions reserved by stipulation are directed at the issues thus raised. In substance it is claimed that § 968e is so vague and uncertain that it is unenforceable; that the legislature did not intend to define a crime but to state a regulation; that the section contains an exclusive penalty, the revocation or suspension of the permit, and that therefore the general penalty section, 1083c, is inapplicable; and that § 968e is unconstitutional.

The second and third claims are sufficiently related to warrant discussion as a single issue. A reading of § 968e shows that it is plainly aimed at an evil long recognized in the history of liquor control legislation, the "tied house." This is the subject of legislative prohibition in many states. Rigid restriction in this respect was recommended by the special liquor study

manufacturing or wholesaling such liquor shall lend money or otherwise extend credit, directly or indirectly, to any such permittee or backer thereof or to the employee or agent of any such permittee or backer. The commission shall revoke or suspend any permit for a violation of this section. An appeal from such order or revocation or suspension may be taken in accordance with section 971e.

[2] Sec. 1083c. Any person convicted of a violation of any provision of this chapter, for which a specified penalty is not imposed shall, for each offense, be fined not more than one thousand dollars or imprisoned not more than one year or both.

commission in its model bill, reported to the Connecticut General Assembly in 1933, Connecticut House Journal, 1933, pp. 1124, 1139, and adopted in substance by the General Assembly, General Statutes, Cum. Sup. 1933, § 703b; Cum. Sup. 1935, § 1047c; Cum. Sup. 1939, § 968e. These sections are perhaps, strictly speaking, regulatory, but there is not any reason why the legislature could not make the violation of these regulations criminal acts. The Liquor Control Act itself is regulatory, but contains many criminal penalties of undoubted validity.

In its application to this case, § 968e prohibits the permittee from receiving credit in excess of thirty days, and one in the position of the defendant from extending credit, directly or indirectly, to a permittee. The demurrer admits that the defendant has done the forbidden act, and the only remaining question upon this aspect of the case is whether his dereliction is punishable as a crime. As § 968e now stands, accepting a credit requires the revocation of a permit held by the permittee, but that of course does not apply to the lender. Unless the penalty of § 1083c applies, there is no penalty to be inflicted upon him; and he is the only one we are concerned with in this case. The provision concerning a mandatory revocation of the permit, contained in § 968e, was inserted in 1939, and previously was not in the Liquor Control Act. Before the provision was inserted, a violation of the existing enactment would have been ground for the revocation of a permit in the discretion of the commission. General Statutes, Cum. Sup. 1935, § 1026c; Cum. Sup. 1935, § 1052c as amended by Cum. Sup. 1939, § 971e; Cum. Sup. 1935, § 1053c as amended by Cum. Sup. 1939, § 972e; and the purpose of the insertion was plainly to make revocation mandatory in case of a violation of the statute, instead of leaving

it as a discretionary matter. The defendant's claim that the commission's duty to revoke permits relieves him of criminal responsibility must necessarily be based upon the erroneous assumption that the legislature saw fit to forbid a serious evil and at the same time made the prohibition useless by rendering it unenforceable. It is obvious that § 968e was designed to place definite restrictions upon nonpermittees as well as permittees and the defendant cannot be allowed to place himself beyond the reach of the law upon the wholly untenable theory that only permittees are subject to penalties thereunder.

We conclude that § 968e and § 1083c, read together, provide for a criminal penalty for the violation in question. The defendant relies upon *Central Trust Co.* v. *Mann's Restaurants,* 2 N. Y. S. (2d) 447, 449, 166 Misc. 381. The language of the New York statute varies from ours, and we cannot consider the case as weighty authority against the view we take.

Based upon the accepted legal proposition that where a criminal statute is too indefinite in its terms to enable one to determine what it requires, it violates the due process clause (*International Harvester Co.* v. *Kentucky,* 234 U.S. 216, 34 S. Ct. 944), it is contended that the phrase describing the forbidden act, to "lend money, or otherwise extend credit, directly or indirectly" defies accurate definition, is so vague and uncertain, arbitrary and unreasonable, and so lacking in relation to any lawful purpose as to be unconstitutional. The crux of the objection seems to be not that the prohibition is too vaguely stated, but that its clarity and comprehensiveness are too sweeping, in that it seems "to include within its scope any credit dealings . . . even though the transaction had no relation to the liquor business." The act does expressly prohibit such transactions. It closes the loopholes. Its pro-

hibitions relate directly to a lawful and important legal purpose, the abolition of the "tied house." Given a clear and lawful purpose, such a statute is not arbitrary and unreasonable merely because it comprehensively prohibits a permittee from receiving credit from a stockholder in a brewing company, and the latter from extending such credit. Obviously the acts here charged, the indorsements of notes, are extension of credit. This very case is a good example of the evil the legislature sought to eliminate. The demurrer admits that this defendant, a stockholder in a brewing company, extended credit to thirteen different permittees. Whether the money thus secured went for the purchase of liquor, or of groceries or automobiles, is of no consequence; the potential result was to tie the permittee to the brewery, and that is a sternly forbidden act. Even if it could be proved, in a given case, that such was not the purpose, the legislature could and obviously did regard it as so likely to be the reason that the act must be prohibited. We fail to discover anything arbitrary or unreasonable in this. The prohibition has direct and rational relation to its purpose. The test of certainty in a criminal statute is discussed in *State* v. *Andrews*, 108 Conn. 209, 213, 142 Atl. 840, where it is said that such statutes will not be held void for uncertainty "if a practicable or sensible effect may be given to them." Such effect is plainly apparent in the present case.

The further claim is made that the statute is discriminatory,—and so it is, but its discrimination is not unconstitutional within the holding of any authority the defendant has advanced or we have been able to discover. A law which is uniform in its operation is not rendered invalid merely because of the limited number of persons who will be affected by it. *Walp* v. *Mooar*, 76 Conn. 515, 521, 57 Atl. 277. While *State* v.

*Muolo,* 119 Conn. 323, 329, 176 Atl. 401, does not expressly state the proposition advanced in the *Walp* case, supra, it is an excellent illustration of it. See also *State* v. *Cullum,* 110 Conn. 291, 296, 147 Atl. 804. In *Sanger* v. *Bridgeport,* 124 Conn. 183, 189, 198 Atl. 746, we said: "Before a court can interfere it must be able to say that there is no fair reason for the law which would not require with equal force its extension to others whom it leaves untouched." Primarily the question of classification is one for the legislature, and the courts will not interfere unless it is clearly unreasonable. *Silver* v. *Silver,* 108 Conn. 371, 378, 143 Atl. 240; *Second National Bank of New Haven* v. *Loftus,* 121 Conn. 454, 460, 185 Atl. 423. Nothing in the Connecticut or federal constitutions is inconsistent with the right of the state either to license and regulate, or to prohibit, the sale of intoxicating liquors. *Allyn's Appeal,* 81 Conn. 534, 71 Atl. 794. "The ordinary test of control applicable to ordinary business does not apply. Rightly so, because what a legislative body may entirely prohibit, it certainly can regulate drastically, if it deems best for society." *Premier-Pabst Sales Co.* v. *State Board of Equalization,* 13 Fed. Sup. 90, 93. Applying these accepted principles to the present situation, we fail to find any unconstitutional discrimination.

In addition to the thirteen counts we have discussed, the information contains ten counts alleging a like extension of credit to designated persons who were not permittees when the credit was extended, but had filed applications for permits, and had become permittees thereafter during the life of the credit. The credits did not terminate when the defendant signed as co-maker or indorser; they continued for a considerable period after the applicant became an actual permittee, and the state contends that as soon as the permit was

granted the defendant was, in law and in fact, unlawfully extending credit to a permittee, and that this unlawful conduct continued throughout the period of the loan. It is further claimed that these credits were patently extended to gain economic advantage over potential outlets even before they came into formal existence, and constituted in a sense even more flagrant conduct than the defendant's activities in connection with established businesses. These are powerful and persuasive arguments. The statute, being penal, must be rather strictly construed and its meaning cannot be extended by presumption or intendment. *State* v. *Weber,* 121 Conn. 160, 162, 183 Atl. 397. But "The purpose of the rule of strict construction is not to enable a person to avoid the clear import of a law through some mere technicality, but to enable the people of the State to know clearly and precisely what acts the legislature has forbidden under a penalty, that they may govern their conduct accordingly, and to make sure that no act which the legislature did not intend to include will be held by the courts within the penalty of the law. *Daggett* v. *State,* 4 Conn. 60, 63; *United States* v. *Lacher,* [134 U. S. 624, 629, 10 S. Ct. 625]. To enforce the rule beyond its purpose would be to exalt technicalities above substance. 'The rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in frustration of the obvious legislative intent.' *United States* v. *Corbett,* 215 U. S. 233, 242, 30 Sup. Ct. 81; *United States* v. *Lacher,* supra." *State* v. *Faro,* 118 Conn. 267, 274, 171 Atl. 660. Upon this consideration the question is close. One in the position of the defendant is forbidden to extend credit, directly or indirectly, to persons who are permittees, not to persons who are applicants for permits. If he

"extended" credit to the persons named in these ten counts, even though they were then applicants for permits, he would not violate the statute if that extension ceased before they became permittees; but if, as here, that credit extended into a period after they became such permittees, a different situation is presented. The most common usage of the word "extend," especially in legal connotation, is along the line of its derivation, to stretch out. See 25 C.J. 225. Considering the context and purpose of the statute, it is a fair conclusion that its meaning refers to "something already begun," "implying a continuance of the same." 25 C.J. 225, footnote 71. We construe the statute to include extension of credit to applicants for permits, represented by notes which are to run after the permits are granted.

The Superior Court is advised to overrule the demurrer to all twenty-three counts. Costs will be taxed upon this reservation as upon an appeal by the defendant on which he did not prevail.

In this opinion the other judges concurred.